**SCOFIELD, Collector of Internal Revenue, v. TINNIN.**

**No. 12280.**

United States Court of Appeals Fifth Circuit.

Dec. 10, 1948.

Theron L. Caudle, Asst. Atty. Gen., Henry W. Moursund, U. S. Atty., of San Antonio, Tex., and Helen Goodner, Sp. Asst. to Atty. Gen., for appellant.

Jerome Sneed, Jr., of Austin, Tex., for appellee.

Before HOLMES, WALLER, and LEE, Circuit Judges.

WALLER, Circuit Judge.

The judge below made the following clear statement of the issues and facts involved:

"Plaintiff, prior to his death, was an individual residing in Del Rio, Val Verde County, Texas, and was engaged in the business of clearing ranch lands, constructing tanks or reservoirs on ranch lands, terracing farm land, and the eradication of prickly pear on ranch lands, all being performed under the direction and guidance of the range program of the United States Agricultural Adjustment Administration. The plaintiff, before his death, was engaged solely and exclusively in this type of business during the years 1938, 1939, 1940, and the first six months of 1941. Plaintiff, when living, conducted his said operations by virtue of certain contracts entered into with ranch and farm land owners which specified the work to be done and the amount of compensation to be paid therefor. Before his death, plaintiff employed labor at a specified wage per hour and he determined when and how the work was to be done by said laborers in the execution of his contract.

"The plaintiff, when living, was the assignee of the owner of the farm and ranch lands and undertook to fulfill the contract

made by the owner of the ranch lands. The owner of the farm and ranch lands had in each instance made a contract with the United States, acting through the Agricultural Adjustment Administration, wherein the said owner of the farm and ranch lands agreed to clear the lands and build tanks on those lands, thus changing them from waste unproductive lands into desirable and productive lands.'

"At no time did the plaintiff's decedent plant agricultural land or prepare the soil for planting by means of plowing, discing, dragging, sowing, broadcasting or planting seed, and his activities were not those of the annual planting of crops.

*     *     *     *     *     *

"The taxes which were sought to be recovered by the plaintiff, when living, were paid upon laborers who actually went upon the land and were engaged in the construction of tanks and reservoirs, the eradication of prickly pear from the land, and the clearing of ranch lands. During the years 1938, 1939, 1940, and the first six months of 1941, this was the sole business and endeavor of the plaintiff."

Under the foregoing facts the Court concluded that the widow, as community survivor of the deceased contractor who sued to recover Social Security taxes so paid on the theory that the employees in question were agricultural laborers and exempt under the Social Security Act, 42 U.S.C.A. § 301 et seq., should have judgment for the portion of the Social Security taxes so contributed by her deceased husband.

The facts are stipulated and the sole question involved is whether or not the employees of the deceased contractor were engaged in agricultural labor during the time involved.

■ Prior to 1939 the Act contained no definition of the term "agricultural labor" but in that year a definition was embodied in an amendment which expressly defined the term [see footnote, 2 infra], but it had no retroactivity or relation to the years prior to the date of amendment. Chester C. Fosgate Co. v. United States, 5 Cir., 125 F.2d 775, 777. So for the time prior to January 1, 1940, the statutory definition cannot be used as may be done for the years subsequent to the amendment.

In the absence of a statutory definition of agricultural labor in the original Act we held in Chester C. Fosgate Co., v. United States, supra, that we would look to administrative regulations for a definition, saying:

"The very next Section § 908, 42 U.S. C.A. § 1108, authorized the making of administrative regulations. Regulation 90 was promulgated, and Article 206(1)[1] * * * undertook to give a practical, workable interpretation of what was to be treated as 'agricultural labor.' Subdivision (a) declared services performed by an employee, *on a farm*, in cultivating the soil or harvesting the crop were included; and subdivision (b) also included processing, packing, and marketing the things raised, if performed by an employee of the producing owner or tenant of the farm, and if done *as an incident* to the farming operations as distinguished from manufacturing or commercial operations. This interpretation is not so broad perhaps as the dictionary might have permitted, but it dealt practically and reasonably with some of the

[1] "Art. 206 (1) Agricultural labor.—The term 'agricultural labor' includes all services performed—

"(a) By an employee, on a farm, in connection with the cultivation of the soil, the harvesting of crops, or the raising, feeding, or management of live stock, bees, and poultry; or

"(b) By an employee in connection with the processing of articles from materials which were produced on a farm; also the *packing*, packaging, transportation, or marketing of those materials or articles. Such services do not constitute 'agricultural labor,' however, unless they are performed by an *employee* of the owner or tenant of the farm on which the materials in their raw or natural state were produced, and unless such processing, packing, packaging, transportation, or marketing is carried on as an incident to ordinary farming operations as distinguished from manufacturing or commercial operations.

"As used herein the term 'farm' embraces the farm in the ordinarily accepted sense, and includes stock, dairy, poultry, fruit, and truck farms, plantations, ranches, ranges and orchards.

"Forestry and lumbering are not included within the exception."

borderline questions such as arose in this case."

In the present case, the employees, prior to the 1939 amendment, were neither: (a) Cultivating the soil; (b) harvesting crops; (c) raising, feeding, or managing livestock, bees, or poultry; (d) processing, packing, packaging, transporting, or marketing materials produced on a farm; within the purview of the regulation. Nor were the employees, after the date of the 1939 amendment,[2] employed in connection with (a) cultivating the soil; (b) raising or harvesting any agricultural or horticultural commodity; (c) raising, shearing, feeding, caring for, training, or management of livestock under the first subsection of the amendment; neither were the laborers employed by the owner or tenant or other operator of a farm in connection with the operation and management, conservation, improvement, or maintenance of such farm and its tools and equipment, or salvaging timber or clearing brush or other debris left by hurricane under the second subsection of the 1939 amendment [Title 26, U.S.C.A. § 1607(l) (1) and (2), respectively]. The fact that the laborers were eradicating prickly pear so as to make better grazing for sheep is not employment connected with raising, shearing, feeding, caring for, training, or management of sheep when there is no evidence whatsoever that there were any sheep on any of the lands where the work occurred. The preparing of tanks to furnish water for livestock does not include raising, feeding, caring for, training, and managing livestock, in view of the fact that there is no evidence whatsoever, of the existence of any livestock on any of the lands where such employees worked. There is no evidence that any employee sheared or fed a single sheep, or fed, cared for, or trained a single animal, or that they ever cultivated any crops or harvested the yield therefrom in the performance of the work in question.

We are of the opinion that under the definitions contained in the regulation prior to January 1, 1940, and the statute and regulations in effect thereafter, the employees were not engaged in agricultural labor.

Here the laborers were not employees of the owner or tenant. The employer owned no land. The work done was not incidental to farming; it was the sole occupation of the Appellee. His work was a prelude to farming and ranching. The taxpayer was engaged in the improvement, but not in the farming, of land. He neither sowed nor reaped. His compensation came from the United States; his work was in conformity with the requirements of the Government. We, therefore, think that his enterprise was commercial and not agricultural as the latter term is above defined.

The judgment of the Court below is reversed and the cause is remanded with directions to the lower Court to dismiss the complaint.

Reversed and remanded.

---

[2] Sec. 1607 (l) Title 26 U.S.C.A., is as follows:

"(l) Agricultural labor. The term 'agricultural labor' includes all service performed—

"(1) On a farm, in the employ of any person, in connection with cultivating the soil, or in connection with raising or harvesting any agricultural or horticultural commodity, including the raising, shearing, feeding, caring for, training, and management of livestock, bees, poultry, and fur-bearing animals and wildlife.

"(2) In the employ of the owner of tenant or other operator of a farm, in connection with the operation, management, conservation, improvement, or maintenance of such farm and its tools and equipment, or in salvaging timber or clearing land of brush and other debris left by a hurricane, if the major part of such service is performed on a farm."